# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **CHESTER RAY EASTHAM,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. CIV-12-769-D** |
| | ) | |
| **JUSTIN JONES, Director DOC,** | ) | |
| **CLAUDE CHESTER, Warden,** | ) | |
| **MICHAEL ENGELSGJERD, M.D.,** | ) | |
| **KIRK SMITH, M.D., MARK** | ) | |
| **STEVENS, Health Services Admin.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## REPORT AND RECOMMENDATION

### Defendants Chester, Engelsgjerd, Smith, and Stevens

## I.     Plaintiff's complaint.

Through his civil rights complaint, Plaintiff claims that Claude Chester, the warden of the Lawton Correctional Facility (LCF), a private prison, LCF doctors Michael Engelsgjerd and Kirk Smith, and LCF Health Services Administrator (HSA) Mark Stevens – along with the now-dismissed Oklahoma Department of Corrections (DOC) Director Justin Jones – failed to provide him with adequate medical care for cataracts and his shoulder, subjecting him to cruel and unusual punishment. Doc. 1. Specifically, Plaintiff maintains the Defendants determined that a surgical procedure recommended by an eye specialist was medically unnecessary and canceled his scheduled appointment.

*Id.* at 2, 4.[1]  He alleges that as a consequence of his cataracts, he "could not see the person coming"[2] and was assaulted and fell, hitting his elbow on a concrete floor and injuring his shoulder.  *Id.* at 2.  Plaintiff further alleges that from the time of that incident he made many attempts to obtain proper medical treatment, including an MRI; that he has been in "extreme pain and discomfort" and "doctored with ibuprofen"; that his requests for medical records have been denied; and, that a scheduled reevaluation has not occurred.  *Id.*

## II.    Relevant procedural history.

This matter is on referral to the undersigned Magistrate Judge by United States District Judge Timothy D. DeGiusti for initial proceedings pursuant to § 636(b)(1)(B), (C).  The undersigned previously recommended the dismissal of Defendant Jones from the case, and that order has been adopted.  Docs. 48, 57. As to the remaining Defendants (LCF Defendants), by court order, Doc. 11, and consistent with *Martinez v. Aaron*, 570 F. 2d 317 (10th Cir. 1978), LCF submitted a Special Report regarding the subject matter of the complaint.  Doc. 41. Defendant Dr. Englesgjerdg then moved for summary judgment, Doc. 42, as, thereafter, did Defendant Warden Chester, Defendant Dr. Smith, and HSA

---

[1]     Page citations to the complaint are in sequential order and reflect this court's CMECF pagination.

[2]     Unless otherwise indicated, quotations in this report are reproduced verbatim.

Stevens.  Doc. 44.[3]  After receiving two thirty-day extensions of time, Docs. 46,

47, 49, and 50, Plaintiff then filed four responses: the first two to the merits of

Defendant Engelsgjerd's and Defendants Chester, Smith, and Stevens' motions,

respectively, Docs. 53, 54; the third, an objection to perceived deficiencies in the

Special Report, Doc. 55; and, the fourth, a supplement to his objections to both

motions for summary judgment.[4]  Doc. 56.

After careful review of Plaintiff's complaint, of the Special Report and

Plaintiff's objections thereto, and of the parties' motions and briefs, the

undersigned recommends that summary judgment be granted in favor of the

LCF Defendants.

## III.   Analysis.

### A.     Standard of review.

Summary judgment shall be granted "if the movant shows that there is no

genuine dispute as to any material fact and the movant is entitled to judgment

as a matter of law."  Fed. R. Civ. P. 56(a).  In considering a motion for summary

judgment, the court must view the facts and inferences drawn from the record

---

[3]     Service issues that are not relevant to the matters addressed in this report were raised and resolved during this time period.  Docs. 33, 36, 37, 40, and 43.

[4]     Plaintiff's reply brief – which is unsworn – addresses his complaints concerning post-surgery developments.  Doc. 56.  He concludes the brief by asking for the appointment of counsel.  *Id.* at 3.

in the light most favorable to the nonmoving party. *Burke v. Utah Transit Auth. & Local 382*, 462 F.3d 1253, 1258 (10th Cir. 2006) (quotation omitted). And, while a pro se plaintiff's complaint is liberally construed, a pro se plaintiff must adhere to the same rules of procedure that are binding on all litigants. *Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007). Thus, strict adherence by a pro se plaintiff to the requirements of Fed. R. Civ. P. 56 is required. With respect to those requirements, the Supreme Court has determined that

> the plain language of Rule 56 . . . mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

Additionally, when Defendants assert an affirmative defense – such as the failure to exhaust administrative remedies – in a motion for summary judgment, they "must demonstrate that no disputed material fact exists regarding the affirmative defense asserted." *Hutchinson v. Pfeil*, 105 F.3d 562, 564 (10th Cir. 1997). "If the defendant[s] meet[] this initial burden, the plaintiff must then demonstrate with specificity the existence of a disputed material fact." *Id.* "If the plaintiff fails to make such a showing, the affirmative defense bars his claim,

4

and the defendant[s] [are] then entitled to summary judgment as a matter of law." *Id.*

## B. Shoulder claim.

### 1. The parties' contentions.

The LCF Defendants assert as undisputed fact that Plaintiff did not properly exhaust available administrative remedies in connection with his claim that they subjected him to cruel and unusual punishment by failing to provide adequate medical care for a shoulder injury he sustained on July 25, 2011. Doc. 42, at 2-3, Doc. 44, at 2-3. In response, Plaintiff contends DOC officials did not allow him to correct a procedural error he made in the administrative process, thus preventing him from fully exhausting this claim. Doc. 53, at 1-5, Doc. 54, at 1-6.

### 2. Exhaustion of administrative remedies.

The Prison Litigation Reform Act of 1995 (PLRA) requires that a prisoner exhaust all available administrative remedies before resorting to a § 1983 action in federal court. Specifically, 42 U.S.C. § 1997e(a) provides as follows:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

*Id.* In construing this legislation, the United States Supreme Court has

determined "that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007). A prisoner, such as Plaintiff, successfully exhausts administrative remedies by completing the administrative review process established by the prison grievance procedure. *Id.* at 218. "An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim under PLRA for failure to exhaust his administrative remedies." *Jernigan v. Stuchell,* 304 F.3d 1030, 1032 (10th Cir. 2002). "To exhaust administrative remedies an inmate must properly comply with grievance procedures; substantial compliance is insufficient." *Fields v. Okla. State Penitentiary*, 511 F.3d 1109, 1112 (10th Cir. 2007). Courts, however, "are obligated to ensure that any defects in exhaustion were not procured from the action or inaction of prison officials." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007).

### 3. Plaintiff's requisite exhaustion.

Prior to initiating this lawsuit, Plaintiff was required to exhaust his administrative remedies pursuant to the DOC Offender Grievance Process, OP-090124. *See* Doc. 41, at Attach. 33. At the final step in the DOC's grievance policy – the only step implicated here – an inmate may appeal an unfavorable facility-level grievance response to the administrative review authority ("ARA"). *Id.* at VII. The ARA is defined as the DOC "director, chief medical officer, or

6

their designee . . . ." *Id.* at I.E.  The ultimate ruling of the ARA concludes the administrative process available to an inmate through the DOC.  *Id.* at VII.D.

### 4. Plaintiff's exhaustion efforts.

As support for their statement of undisputed fact that Plaintiff failed to exhaust administrative remedies with regard to his shoulder claim, the LCF Defendants rely on the findings of the Special Report investigation which were verified by Bill Gibson, the Executive Assistant to the Warden at LCF.  Doc. 41, at 10, Doc. 42, at 2-3, Doc. 44, at 2-3.  The investigation conducted by LCF generally revealed that Plaintiff "attempted to exhaust his claim pertaining to his shoulder, but never properly exhausted his administrative remedies with respect to that issue." Doc. 41, at 7.

Specifically, the LCF Defendants maintain that Plaintiff submitted grievance appeals to the ARA – here, Genese McCoy, the DOC Medical Services Administrator – and that the appeals were returned to him unanswered due to his procedural errors.  Doc. 42, at 10, Doc. 44, at 12-13.  Rather than resubmitting corrected grievance appeals, Plaintiff filed this lawsuit. Defendants argue that Plaintiff's failure to fully complete the grievance procedure prior to filing this lawsuit should result in the dismissal of his shoulder claim.  Doc. 42, at 11, Doc. 44, at 13.  For his part, Plaintiff does not deny that the appeals were returned unanswered due to his procedural errors,

but he contends[5] instead that he was prevented from completing the grievance process because Ms. McCoy returned the grievances unanswered without allowing him one opportunity to correct his procedural error "in direct violation of ODOC OP-090124, Section VII, subsection 1, paragraph e . . . ." Doc. 53, at 3, Doc. 54, at 3.

The provision relied upon by Plaintiff states as follows:

> The Administrative Review Authority has the authority to return grievances and grievance appeals unanswered when they contain more than one issue or when they fail to be filed in accordance with this procedure. The offender will be given one opportunity to correct any errors, which must be received by the Administrative Review Authority within 30 days of the time the offender is notified of improper filing. If the offender fails to correct the errors, the grievance or grievance appeal will be returned unanswered and the offender will have waived/forfeited the opportunity to proceed in the grievance process.

DOC Offender Grievance Process, OP-090124, at VII.B.1.e. *See* Doc. 41, at Attach. 33. Under a plain reading of this provision, however, this one-time chance to correct errors is "given" to the inmate by virtue of the procedure itself. *Id.* The provision procedurally requires them to notify the inmate only that his filing was not proper – nothing more. When the DOC procedure intends

---

[5]    The court liberally construes a pro se Plaintiff's pleadings. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972); *see also United States v. Pinson*, 584 F.3d 972, 975 (10th Cir. 2009) ("[W]e must construe [a pro se inmate's] arguments liberally; this rule of liberal construction stops, however, at the point at which we begin to serve as his advocate.").

otherwise, it so provides. For example, at the facility level, "[t]he reviewing authority will return unanswered any grievance that contain[s] any errors in the filing process and *notify the offender to correct the errors within 30 days . . . .*" *Id.* at VI.B.6 (emphasis added). In contrast, the only *notification* the ARA is required to give to the offender is of the improper filing. *Id.* at VII.B.1.e. To find otherwise would be to impose an affirmative obligation on the ARA that the provision itself does not. Thus, "[u]nder a plain reading of the ODOC grievance procedures," *Little v. Jones*, 607 F.3d 1245, 1250 (10th Cir. 2010), the ARA was not required to notify Plaintiff of his clearly-stated one-time procedural right to correct his errors in order to avoid waiver of his opportunity to proceed in the grievance process. The ARA fulfilled its *only* stated duty in this case – it notified Plaintiff of the "improper filing" of his appeals. DOC Offender Grievance Process, OP-090124, at VII.B.1.e. *See* Doc. 41, at Attach. 33. The ARA did not in any manner prevent or hinder Plaintiff from fully exhausting his administrative remedies.

In a similar vein, Plaintiff attempts to excuse his failure to correct his admitted error in the grievance appeal process by relying on an undated form utilized at one time by the ARA – in that instance, Debbie Morton, the director's designee – in returning grievance appeals as "unanswered." Doc. 54, at 5-6, Ex. 1. Pointing to a portion of the form that advised an inmate of the final

9

opportunity to properly submit a corrected grievance, Plaintiff presumes that this form is sent to an inmate with a non-medical grievance and argues that "[i]f ODOC is going to inform the inmate filing a nonmedical grievance of his right to correct and resubmit his grievance appeal . . . then ODOC must likewise inform the inmate filing a medical grievance appeal that he to, has a right to correct and resubmit his medical grievance appeal." Doc. 54, at 5. The merits of this argument aside, Plaintiff presents no evidence that this form was actually in use by the ARA at the time of his grievance appeals. The evidence, in fact, is otherwise: the form, *id.* at Ex. 1, provides for a corrected resubmission within a ten-day time frame rather than within the thirty days an inmate is procedurally afforded to correct any errors under the operative grievance process effective May 24, 2011. DOC Offender Grievance Process, OP-090124, at VII.B.1.e. *See* Doc. 41, at Attach. 33.

> **5. Application of the law to the summary judgment record.**

Plaintiff does not deny the LCF Defendants' contention that his "shoulder claim" grievance appeals contained errors that he failed to correct prior to initiating this lawsuit. Doc. 53, at 1-5, Doc. 54, at 1-6. Thus, the LCF Defendants met their initial burden of demonstrating that no disputed material fact exists regarding their affirmative defense that Plaintiff failed to exhaust his

administrative remedies with regard to the medical care of his shoulder. At that point, it became Plaintiff's burden to "demonstrate with specificity the existence of a disputed material fact." *Hutchinson*, 105 F.3d at 564. Plaintiff attempted to do so by claiming that the ARA "clearly prevented" his exhaustion efforts "by failing to provide him with one opportunity to correct and resubmit his Grievance Appeal . . . ." Doc. 53, at 4-5. Plaintiff's attempt is unavailing. DOC procedure did not require the ARA to affirmatively notify Plaintiff of his procedural right to correct and resubmit his grievance appeal – he simply failed to take advantage of the procedure's clearly-stated opportunity to fully exhaust his claim.

Because Plaintiff – who does not deny his failure to fully exhaust his administrative remedies before proceeding in federal court – has not demonstrated the existence of a disputed material fact as to whether he was prevented from exhausting those remedies, the LCF Defendants have affirmatively established that Plaintiff failed to exhaust his administrative remedies with regard to his shoulder-care claim prior to initiating this § 1983 action. Consequently, the LCF Defendants are entitled to summary judgment on this claim as a matter of law.

### C. Cataract claim.

#### 1. The parties' contentions.

Plaintiff contended through his complaint that the LCF Defendants subjected him to "medical neglect" and cruel and unusual punishment by canceling a surgery – scheduled by a specialist at the Dean McGee Eye Institute in March 2012 – for the removal of his cataracts. Doc. 1, at 2, 4, Attach. 33-34. He alleged that as a result of his cataracts, he was assaulted and "could not see the person coming . . . ." Doc. 1, at 2.

In seeking summary judgment, the LCF Defendants – who do not dispute the fact that Plaintiff exhausted his administrative remedies with regard to his claim – argue (1) that Plaintiff was not denied medical treatment for his eyes, (2) that he "underwent cataract surgery on October 11, 2012," (3) that a difference in opinion over the need for surgery does not constitute deliberate indifference, and (4) that any delay in having the surgery did not cause Plaintiff substantial harm. Doc. 42, at 2, 4, Doc. 44, at 2, 4.

Plaintiff responds by focusing on Defendants' claim that the delay in his cataract removal surgery did not cause him substantial harm. Doc. 53, at 5-13, Doc. 54, at 6-21. He maintains that while Defendants state that the doctor at Dean McGee noted that Plaintiff did not complain of pain, he was taking Acetaminophen for pain and this "is a good indicator that Plaintiff was suffering

headaches as a result of his cataracts." Doc. 54, at 9. In addition, Plaintiff argues that "[t]he connection between the delay in Plaintiff's eye surgery and that delay causing Plaintiff sufficient harm and injury can be found in the July 25, 2011, attack upon the Plaintiff." *Id.* at 18.

### 2. Eighth Amendment.

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain," including "deliberate indifference to serious medical needs of prisoners." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). "The test for constitutional liability of prison officials involves both an objective and a subjective component." *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005) (quotations omitted). In that regard, "[t]he prisoner must first produce objective evidence that the deprivation at issue was in fact 'sufficiently serious.'" *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). "[A] medical need is sufficiently serious if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Id.* (quotations omitted). Second, under the subjective component, the prisoner must establish deliberate indifference to his serious medical needs by "present[ing] evidence of the prison official's culpable state of mind." *Id.* He must show that the prison "official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Farmer*, 511 U.S. at 842. "Moreover, a

delay in medical care only constitutes an Eighth Amendment violation where the plaintiff can show the delay resulted in substantial harm." *Mata*, 427 F.3d at 751 (quotation omitted). "The substantial harm requirement may be satisfied by lifelong handicap, permanent loss, or considerable pain." *Id.* (quotation omitted).

### 3. The evidence of record.

The evidence of record shows that on July 5, 2011, Plaintiff submitted a request for medical services, stating that he was going blind and complaining that "those glasses should have been up-dated months ago . . . ." Doc. 53, at Ex. 6, Doc. 54, at Ex. 6. He requested "lazer surgery" on his eyes. Doc. 53, at Ex. 6, Doc. 54, at Ex. 6. When Plaintiff repeated his request on September 11, 2011, he was advised that he had an appointment that month and to "please show up" and his vision would be checked. Doc. 41, at Attach. 2. On September 14, 2011, Plaintiff was seen by an optometrist who prescribed new corrective lenses. *Id.* at Attach. 3. Subsequent records of medical visits reflect that bilateral "Senile Cataract NOS" was confirmed as of that date. *Id.* at Attach. 7, 22.

Plaintiff complained on November 29, 2011, that his glasses were not working. *Id.* at Attach. 4, at 1. He asked that his cataracts be removed "or ship me so that they can be fixed." *Id.* He made a similar request on December 7, 2011. Doc. 1, at Attach. 15. On December 13, 2011, Plaintiff repeated his

request to have his cataracts removed, stating that "[e]ven though two different eye doctor's have recommended procedure nothing has ever been done to correct my vision." Doc. 41, Attach. 4, at 2. He maintained that "[t]his has been going on for over three (3) years now." *Id.* Defendant Engelsgjerd saw Plaintiff on December 20, 2011, and noted that he complained of left post flank pain with a past history of kidney stones, of chronic right shoulder pain "with decreased [range of motion] for years," as well as "cataracts for years, worsening . . . ." Doc. 41, at Attach. 5. On examination, Defendant Engelsgjerd noted "Ant chambers appear cloudy with ophthalmoscope" and advised that "[w]e will discuss any referral for eye surgery at next visit." *Id.*

Plaintiff complained about his cataracts again on January 12, 2012 and February 7, 2012, referencing headaches from his glasses and eye strain. *Id.* at Attach. 6. Defendant Smith examined Plaintiff on February 16, 2012, and noted his complaints of worsening vision and light sensitivity. *Id.* at Attach. 7, at 1. The treatment note reflected Defendant Smith's plan for an "[o]phthalmology referral re cataracts." *Id.* at 3.

On March 19, 2012, a doctor at the Dean McGee Eye Institute evaluated Plaintiff's cataracts. Doc. 41, Attach. 8, at 1. Plaintiff claimed that he had been diagnosed with cataracts three to four years ago, and reported his vision had worsened, especially over the past year, and that it was hard to read. *Id.*

Plaintiff advised the doctor that he had no pain and no irritation. *Id.* The doctor recommended cataract extraction, the right eye first. *Id.* at 3. He discussed the risks, benefits, and alternatives with Plaintiff who wished to proceed with the surgery. *Id.* The doctor's plan was to schedule the next available cataract extraction. *Id.*

On April 27, 2012, the Utilization Review Committee at LCF reviewed the cataract surgery request and determined the surgery was not medically necessary at that time. Doc. 41, at Attach. 10. The committee advised Plaintiff that he would be re-evaluated in three months. *Id.* Defendant Engelsgjerd, who was involved with Defendant Smith in making that decision, opined by affidavit that "[i]n his professional opinion the surgery did not have to be done at that time because even though a cataract had developed there was no indication that surgery was medically necessary at that time." *Id.* at Attach. 9, ¶ 4. Defendant Engelsgjerd noted that a cataract does not cause pain and that Plaintiff "had no problem seeing or getting around the facility." *Id.* ¶¶ 4-5. In short, the doctor found that "[a] cataract would need to be taken care of if it was impacting one's daily living, which it did not appear to be at the time" and that it was his professional opinion at the time "that the surgery did not need to be done immediately because it was not medically necessary." *Id.* ¶¶ 5-6.

In response to Plaintiff's May 2, 2012 request to staff wherein Plaintiff (1)

claimed that he was being denied medical attention, (2) stated that a doctor at Dean McGee told him that his cataracts "need to be removed," and (3) questioned Defendant Engelsgjerd's authority to "override" the specialist, Defendant Stevens advised Plaintiff that LCF providers determine the medical necessity for a procedure after considering an outside consultant's recommendations. *Id.* at Attach. 11. Plaintiff was next seen on May 19, 2012, complaining of right shoulder pain. *Id.* at Attach. 22. The treatment note makes no reference to any eye-related complaint. *Id.*

Plaintiff filed this lawsuit on July 9, 2012. Doc. 1. Thereafter, on August 8, 2012, he was re-evaluated at Dean McGee and complained of the gradual decrease in his visual acuity. Doc. 41, Attach. 8, at 2. A cataract extraction was planned, and Plaintiff had the cataract in his right eye removed on October 11, 2012. Doc. 41, at Attach. 8, at 3, Attach. 14.

### 4. Application of the law to the summary judgment record.

Plaintiff has failed to demonstrate that a delay in his cataract extraction resulted in substantial harm – that is, a "lifelong handicap, permanent loss, or considerable pain." *Mata*, 427 F.3d at 751 (quotation omitted). Thus, he fails to satisfy the objective component of his claim. *Id.*

In this regard, in response to Defendants' reliance on the fact that he

made no complaint of pain at his March 2012 examination at Dean McGee, Plaintiff argues that he was taking Acetaminophen, a headache pain reliever – prescribed by Defendant Smith – at the time of the examination. Doc. 54, at 8, 9. He concludes, "Thus, it would not be uncommon for Plaintiff not to be suffering pain or headaches from his cataracts when being examined by the doctor at DMEI." *Id.* at 8. This is undoubtedly true. Nonetheless, to the extent that Plaintiff contends that his prescription for Acetaminophen "is a good indicator that [he] was suffering headaches as a result of his cataracts," *id.* at 9, his explanation for the absence of pain at his March 2012 evaluation indicates that the treatment was effective and prevented him from suffering from "considerable pain." *Mata*, 427 F.3d at 751.

Next, in an effort to demonstrate that he experienced significant pain attributable to the delay in his cataract extraction, Plaintiff maintains that "[t]he connection between the delay in Plaintiff's eye surgery and that delay causing Plaintiff sufficient harm and injury can be found in the July 25, 2011, attack upon the Plaintiff." Doc. 54, at 18. He claims that "[o]n July 25, 2011, while awaiting his eye surgery, the Plaintiff stepped out of his cell and . . . was struck in his right temple causing the Plaintiff to fall into the concrete floor of Cell House # 2 injuring his right shoulder . . . ." *Id.* at 16. Plaintiff maintains this could have been prevented "by having Plaintiff moved to a less violent part

of the LCF prison facility or by transferring Plaintiff to one of the medical infirmary cell until he could receive his necessary eye surgery. *Id.* at 18.

The problem with Plaintiff's argument, of course, is that there is no evidence of record to suggest that an LCF Defendant even became aware of his cataracts until September 14, 2011, several months *after* his shoulder injury occurred. Doc. 41, at Attach. 4, 7. And, while Plaintiff clearly complained that a cataract extraction had been recommended prior to the attack and prior to his March 2012 evaluation at Dean McGee, *see id.* at Attach. 4, 5, 6, 7, 8, he offers no proof.[6] He references only a July 5, 2011 request for medical services complaining about his glasses and requesting laser surgery. Doc. 53, at 11, Ex. 6, Doc. 54, at 20, Ex. 6. No mention is made of cataracts. Doc. 53, at 11, Ex. 6, Doc. 54, at 20, Ex. 6.

Accordingly, in the absence of evidence that a delay in Plaintiff's contract extraction resulted in substantial harm, the LCF Defendants are entitled to summary judgment.

## IV.    Recommendation and notice of right to object.

For these reasons, the undersigned recommends that Defendant

---

[6]    There is no indication that Plaintiff sought discovery of what he characterizes as "all" of his medical records upon receiving LCF's Special Report and the LCF Defendants summary judgment motions. Doc. 53, at 11, Doc. 54, at 20.

Engelsgjerd's and Defendants Chester, Smith, and Stevens' motions for summary judgment, Docs. 42, 44, be granted. It is further recommended that Plaintiff's request for appointment of counsel, Doc. 56, at 3, be denied.

The parties are advised of their right to object to this Report and Recommendation by August 28, 2013, in accordance with 28 U.S.C. § 636 and Local Civil Rule 72.1. The parties are further advised that failure to make timely objection to the Report and Recommendation waives the right to appellate review of both factual and legal questions contained herein. *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the undersigned in this case.

IT IS SO ORDERED this 8th day of August, 2013.

SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE